1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    DAVID D. HARRIS,                          No.  2:23-CV-1664-WBS-DMC-P

12                      Plaintiff,

13         v.                                   <u>FINDINGS AND RECOMMENDATIONS</u>

14    J. DUBE,

15                      Defendant.

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18    42 U.S.C. § 1983.  Pending before the Court are the parties' cross-motions for summary

19    judgment.  <u>See</u> ECF Nos. 38 and 45.  Defendant filed an opposition to Plaintiff's motion of

20    summary judgment. <u>See</u> ECF No. 47. Plaintiff filed an opposition to Defendant's motion for

21    summary judgment.  <u>See</u> ECF No. 48.  Defendant filed a reply brief to Plaintiff's opposition. <u>See</u>

22    ECF No. 51.

23          The Federal Rules of Civil Procedure provide for summary judgment or summary

24    adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file,

25    together with affidavits, if any, show that there is no genuine issue as to any material fact and that

26    the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The

27    standard for summary judgment and summary adjudication is the same.  <u>See</u> Fed. R. Civ. P.

28    56(a), 56(c); <u>see also</u> <u>Mora v. ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).  One of

1   the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See

2   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the

3   moving party

> . . . always bears the initial responsibility of informing the district court of
> the basis for its motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file, together
> with the affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

7   Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

8       If the moving party meets its initial responsibility, the burden then shifts to the

9   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

10  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

11  establish the existence of this factual dispute, the opposing party may not rely upon the

12  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

13  form of affidavits, and/or admissible discovery material, in support of its contention that the

14  dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The

15  opposing party must demonstrate that the fact in contention is material, i.e., a fact that might

16  affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S.

17  242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th

18  Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

19  return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

20  (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than

21  simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record

22  taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no

23  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the

24  claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions

25  of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

26  / / /

27  / / /

28  / / /

2

1      In resolving the summary judgment motion, the court examines the pleadings,

2  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.

3  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson,

4  477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the

5  court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.

6  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

8  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

9  1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the

10  judge, not whether there is literally no evidence, but whether there is any upon which a jury could

11  properly proceed to find a verdict for the party producing it, upon whom the onus of proof is

12  imposed." Anderson, 477 U.S. at 251.

13

14              **I.  PLAINTIFF'S ALLEGATIONS**

15      This action proceeds on Plaintiff's original complaint. See ECF No. 1. Plaintiff is a

16  forty-four-year-old male, alleged to have a serious mental illness or disorder.  The incident at

17  issue occurred on February 28, 2023, at the California Health Care Facility ("CHCF") in

18  Stockton, California.  See id. at 12.  J. Dube ("Defendant") is the sole named defending party,

19  employed by CHCF as a Psychiatric Technician. See id. at 2.  Plaintiff claims that Defendant's

20  failure to activate a safety alarm or notify staff of Plaintiff's self-inflicted injuries constituted a

21  violation of Plaintiff's rights. See id. at 3.

22      On February 28, 2023, Plaintiff was placed in the private housing area of B3B-

23  room 113 at CHCF. See id. at 12.  Immediately prior to the incident, Plaintiff was placed on

24  Safety Suicide Watch. See id. at 3.  As Plaintiff remained actively suicidal, Defendant was named

25  as a continuous observer of Plaintiff's safety. See id.  At one point, Plaintiff proceeded to cover

26  up his cell windows in an attempt to obscure Defendant's view of Plaintiff. See id.  Next, Plaintiff

27  obtained a sharp piece of metal and cut his left forearm in two different places. See id.  During

28  this time, Defendant failed to alert or notify any staff or security members of the covered

windows or of Plaintiff's condition. <u>See</u> <u>id.</u>  Eventually, Plaintiff screamed for medical and

psychological assistance. <u>See</u> <u>id.</u> at 5.  While actively bleeding, Plaintiff "pull[ed]" the "covers

down" from his windows and showed Defendant his injuries. <u>See</u> <u>id.</u> at 7.  Defendant then stated,

"I can see you. I watched you do it." <u>See</u> <u>id.</u> at 7.  Plaintiff sustained two lacerations on his left

forearm. <u>See</u> <u>id.</u> at 12.

Plaintiff asserts Defendant had an unobscured view, despite Plaintiff's efforts, to

watch Plaintiff cut his arm and intentionally failed to activate his safety alarm. <u>See</u> <u>id.</u> at 3.

Plaintiff also alleges Defendant was fully aware of Plaintiff's extended history of suicidal

ideations and renewed involuntary medication petitions. <u>See</u> <u>id.</u>

## II.  PARTIES' EVIDENCE

### A.  <u>Plaintiff's Evidence</u>

Plaintiff's motion for summary judgment consists of four pages including an

attached Exhibit A and is not accompanied by a separate statement of undisputed facts. <u>See</u> ECF

No. 38.  Exhibit A is a progress note signed on March 1, 2023, prepared by Defendant.  In this

document, Defendant writes:

> Beginning of 1st watch around 2205, I/P requested this writer to be
> switched out, stating, "he can't sit on me, me and this motherfucker Dube
> don't get along."  The RN educated I/P that all assignments are
> determined from the staffing office and would try to contact staffing to
> allocate a different staff to his door.  I/P waited by his door, stating I will
> board up if you stay here.  Around 2243 I/P covered part of the window to
> his cell door.  I/P was still in good view of this writer.  I/P took part of his
> walker and hit the window of his cell door rapidly, stating "motherfuckers
> think I'm playing, I'm suing everyone."  I/P was hiding an object in his
> hand and started reopening old wound.  RN was notified and came to the
> door promptly.  I/P refused treatment stating he wanted to sue.  I/P was
> educated on using his coping skills and custody was requested to strip his
> cell for I/P's safety.

ECF No. 38, pg. 4.

Plaintiff supports his claim of disputed facts in his opposition to Defendant's

motion for summary judgment entitled "Notice of Burden of Summary Judgment." <u>See</u> ECF No.

48.  Because Defendant's motion is properly presented under the rules, the Court discusses

Plaintiff's evidence, ECF Nos. 38 and 48, in the context of opposition to Defendant's evidence.

**B.**    **Defendant's Evidence**

Defendant's motion for summary judgment is supported by a statement of undisputed facts, see ECF No. 45-5, declaration of Defendant, see EFC, No. 45-1, declaration of defense counsel Krista-Denise Matsumura, Esq., see ECF Nos. 45-2, 45-3, and declaration of Registered Nurse D. Ogbazghi, see ECF No. 45-4. Defendant has lodged the transcript of Plaintiff's deposition. See ECF No. 46.

According to Defendant, the following facts are undisputed:

1.    On February 28, 2023, Plaintiff was put on suicide watch after verbalizing suicidal ideations. (ECF No. 1, at pg. 3. Declaration of K. Matsumura, Ex. A [Excerpts of Plaintiff's Deposition Transcript (P1.'s Dep)] 31:24-32:3.)

2.    Defendant Dube arrive at Plaintiff's cell between 10:00 p.m. and 10:05 p.m. to be his 1:1 sitter. (P1.'s Depo. 33:7-10)

3.    Upon seeing Defendant, Plaintiff began kicking the door of his cell, and stated he did not want Defendant to be his sitter. (Pl.'s Depo. 35:19-37:1, 52:25-53:2.)

4.    The registered nurse on-duty, RN Ogbazghi, then explained to Plaintiff that Defendant could not be moved. A replacement sitter would need to be assigned to watch Plaintiff in order for Defendant to be moved. The nurse told Plaintiff he would call staffing to see if they could find Plaintiff another sitter. (Pl.'s Depo. 36:1-37:14, 53:3-11.)

5.    Plaintiff stated that he would begin boarding up his cell windows if Defendant did not move. Pl.'s Motion for Summary Judgment ((Mot. Summ. J.), ECF 38, Ex. A; Declaration of J. Dube (Dube Decl.) at ¶ 7.)

6.    At around 2243 hours (or 10:43 PM) Plaintiff became agitated due to not receiving a different 1:1 sitter. (Pl.'s Depo. 36:5-11.)

7.    Plaintiff then began covering his windows due to his being angry and upset. (Pl.'s Depo. 36:5-11, 53: 6-11.)

8.    Plaintiff remained in Defendant's sight the entire time he was covering up his windows. (Pl.'s Mot. Summ. J., ECF 38, Ex. A; Dube Decl. at ¶ 11.)

9.    Once Plaintiff finished covering the windows, Defendant was still able to see Plaintiff as Plaintiff had failed to cover one of the windows entirely. (Dube Decl. at ¶ 11.)

10.    Defendant notified the correctional officer on duty and RN Ogbazghi of Plaintiff's actions. (Pl.'s Mot. Summ. J., ECF 38, Ex. A; Dube Decl. at ¶ 10.)

1    11.    Plaintiff took the nose clip from a face mask, which he
received due to the COVID-19 pandemic, and cut his arm. (Pl.'s Depo.
2    30:3-20, 53:12-14.)

3    12.    Plaintiff also began banging on his door with a piece of his
wheelchair. (Pl.'s Depo. 41:20-22, 53:12-14.)
4

5    13.    Plaintiff showed Defendant his arm, which was bleeding.
(Dube Decl. at ¶ 13.)

6    14.    RN Ogbazghi had also returned to Plaintiff's cell, and
Plaintiff removed the window coverings to show his arm to Ogbazghi as
7    well. (Pl.'s Depo. 41:23-25, 47:12-15, 53:15-16.)

8    15.    Plaintiff's arm had two superficial lacerations, both of
which were approximately three centimeters long and minimally bleeding.
9    (Declaration of D. Ogbazghi (Ogbazghi Decl.) at ¶ 7.)

10    16.    When asked if he needed medical attention, Plaintiff
responded, "You can wrap it up and give me a 602 and do a 7219 on it.
11    (Pl.'s Depo. 42:4-7.)

12    17.    Ogbazghi then gave Plaintiff a band-aid to cover his injury
and completed a 7219. (Pl.'s Depo. 42:10-13, 53:15-16.)
13

14    18.    Plaintiff cared for and cleaned the wounds himself and was
advised to inform staff of any further issues or discomfort. (Ogbazghi
Decl. at ¶ 8, 9.)
15

16    19.    The metal nose clip was taken away from Plaintiff and
Defendant Dube was removed as Plaintiff's 1:1 sitter. (Dube Decl. at ¶ 16,
17; Pl.'s Depo. 42:15-16, 53:16-18.)
17

18    20.    Defendant Dube completed a progress note regarding the
incident. (Pl.'s Mot. Summ. J., ECF 38, Ex. A; Pl.'s Depo. 53:16-18.)

19    21.    Both the progress note and the 7219 are accurate accounts
of the incident in question. (Pl.'s Depo. 54:7-13.)
20

21    22.    Plaintiff began boarding up his cell at 2243 hours (or 10:43
PM). (Pl.'s Mot. Summ. J., ECF 38, Ex. A.)

22    23.    Plaintiff received medical attention for the laceration on his
arm at  2246 hours (or 10:46 PM). (Pl.'s Compl., ECF 1, Ex. B.)
23

24    24.    The entire incident, from when Plaintiff begins boarding up
until he received medical care from RN Ogbazghi, lasted approximately
three minutes, from 10:43 PM to 10:46 PM, but lasted no longer than ten
25    minutes. (Pl.'s Mot. Summ. J., ECF 38, Ex. A; Pl.'s Compl., ECF 1, Ex.
B; Pl.'s Depo. 44:17-22.)
26

27    25.    Because Plaintiff demanded to be assigned a different 1:1
sitter, and threatened to board his cell windows if Defendant was not
removed as the 1:1 sitter, Defendant determined Plaintiff's actions to be
28    behavioral rather than suicidal – meaning his goal was to achieve a

secondary gain (to get another 1:1 sitter) – and that Plaintiff was not an
active threat to himself. (Dube Decl. at ¶ 7.)

      26.    Defendant did not activate his staff alarm during this
incident. (Dube Decl. at ¶ 14.)

<u>See</u> ECF No. 45-5.

### III. DISCUSSION

Plaintiff argues that summary judgment in his favor is appropriate because the
evidence shows that Defendant violated Plaintiff's Eighth Amendment rights as a result of
Defendant failing to activate his safety alarm when he observed Plaintiff with a sharp object and
boarding up the cell door windows. <u>See</u> ECF No. 38, pgs. 1-2.  In Defendant's motion, Defendant
argues that the undisputed evidence, including Exhibit A attached to Plaintiff's motion, shows
that Defendant was not deliberately indifferent with respect to his decision not to activate the
alarm. <u>See</u> ECF No. 45, pgs. 5-9.  More specifically, Defendant contends: (1) at issue is
Defendant's decision to not activate the alarm; (2) Defendant's decision to not activate the alarm
did not create an objectively serious risk to Plaintiff's safety; and (3) subjectively, Defendant's
decision to not activate the alarm was not motivated by an intention to cause Plaintiff to suffer.
<u>See id.</u>  For the reasons discussed below, the Court recommends that Plaintiff's motion for
summary judgment be denied and that Defendant's motion for summary judgment be granted.

The treatment a prisoner receives in prison and the conditions under which the
prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel
and unusual punishment.   <u>See</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993); <u>Farmer v. Brennan</u>,
511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts
of dignity, civilized standards, humanity, and decency." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102
(1976).  Conditions of confinement may, however, be harsh and restrictive.  <u>See</u> <u>Rhodes v.
Chapman</u>, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with
"food, clothing, shelter, sanitation, medical care, and personal safety." <u>Toussaint v. McCarthy</u>,
801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when
two requirements are met: (1) objectively, the official's act or omission must be so serious such

7

1    that it results in the denial of the minimal civilized measure of life's necessities; and (2)

2    subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of

3    inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison

4    official must have a "sufficiently culpable mind."  See id.

5            Under these principles, prison officials have a duty to take reasonable steps to

6    protect inmates from safety risks.  See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982);

7    Farmer, 511 U.S. at 833.  Liability exists only when two requirements are met: (1) objectively,

8    the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and

9    (2) subjectively, prison officials knew of and disregarded the risk.  See Farmer, 511 U.S. at 837.

10   The very obviousness of the risk may suffice to establish the knowledge element.  See Wallis v.

11   Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).  Prison officials are not liable, however, if evidence

12   is presented that they lacked knowledge of a safety risk.  See Farmer, 511 U.S. at 844.  The

13   knowledge element does not require that the plaintiff prove that prison officials know for a

14   certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion

15   of danger.  See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  Finally, the plaintiff must

16   show that prison officials disregarded a risk.  Thus, where prison officials actually knew of a

17   substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if

18   harm ultimately was not averted.  See Farmer, 511 U.S. at 844.

19          Here, Plaintiff claims Defendant violated his Eighth Amendment rights because

20   Defendant acted with deliberate indifference towards him by not notifying staff via his safety

21   alarm that Plaintiff was engaged in self-harm.  See ECF No. 38, pg. 1.  Specifically, Plaintiff

22   alleges that Defendant observed Plaintiff with a sharp metal object while on suicide watch duty,

23   yet did not trigger the safety alarm, and Plaintiff injured himself as a result.  See id. at 2.  Plaintiff

24   asserts that Defendant did not follow procedures under California Code of Regulations § 3365(c).

25   See id.

26   / / /

27   / / /

28   / / /

8

1    The Court finds that summary judgment in Defendant's favor is warranted.  While

2    it is undisputed that Defendant did not activate an alarm during the incident at issue in this case,

3    the undisputed evidence shows the following series of events:  (1) Plaintiff became agitated at

4    approximately 2243 hours because Defendant was assigned as his 1:1 sitter and began covering

5    the cell door window; (2) Plaintiff remained in Defendant's sight the entire time he was covering

6    up his cell door window because Plaintiff did not cover the window entirely; (3) Defendant

7    immediately notified the correctional officer on duty as well as Nurse Ogbazghi of Plaintiff's

8    actions; (4) Plaintiff then cut his arm using the nose clip from a face mask; (5) Plaintiff shows

9    Defendant a small cut on his arm, which was bleeding; and (6) Plaintiff received medical

10   attention for the cut on his arm within minutes of injuring himself.  These facts show that

11   Defendant took reasonable steps to respond to the potential risk to Plaintiff's safety and, as a

12   result, cannot be held liable.  See Farmer, 511 U.S. at 844.  Notably, Plaintiff admitted at his

13   deposition that Defendant's progress note, which Plaintiff attaches to his motion as Exhibit A,

14   accurately reflects the events at issue.  In doing so, Plaintiff admits that he was in Defendant's

15   view the entire time, that his injuries were minor, and that he received immediately medical

16   attention.

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1

### IV. CONCLUSION

2         Based on the foregoing, the undersigned recommends as follows:

3            1.      Plaintiff's motion for summary judgment, ECF No. 38, be DENIED

4            2.      Defendant's motion for summary judgment, ECF No. 45, be GRANTED.

5         These findings and recommendations are submitted to the United States District

6 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days

7 after being served with these findings and recommendations, any party may file written objections

8 with the Court. Responses to objections shall be filed within 14 days after service of objections.

9 Failure to file objections within the specified time may waive the right to appeal. <u>See</u> <u>Martinez v.</u>

10 <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

11

12 Dated:  July 24, 2025

13                                         _____

                                      DENNIS M. COTA

14                                       UNITED STATES MAGISTRATE JUDGE

15

16

17

18

19

20

21

22

23

24

25

26

27

28